UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| ADAYANA, INC., | ) | Case No. 13-10919-RLM-11 |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |

**DEBTOR'S FIRST DAY MOTION FOR AUTHORITY TO (A) USE CASH COLLATERAL ON AN EMERGENCY BASIS PENDING A FINAL HEARING; (B) INCUR POSTPETITION DEBT ON AN EMERGENCY BASIS PENDING A FINAL HEARING; AND (C) GRANT ADEQUATE PROTECTION AND PROVIDE SECURITY AND OTHER RELIEF TO COMVEST CAPITAL II, L.P.**

Adayana, Inc., debtor and debtor-in-possession (the "Debtor"), by counsel, pursuant to 11 U.S.C. §§ 361, 363, 364, Rules 4001 and 9014 of the Federal Rules of Bankruptcy Procedure, and S.D. Ind. B-4001-2 and B-9013-3(f)(2) and (f)(3), requests that the Court enter an Interim Order (a) authorizing the Debtor's use of cash collateral, as defined by 11 U.S.C. § 363(a); (b) authorizing the Debtor to incur secured postpetition debt and granting liens and administrative expense priority pursuant to 11 U.S.C. § 364(c) and (d); and (c) authorizing the Debtor to grant adequate protection and provide security to ComVest Capital II, L.P. pursuant to 11 U.S.C. § 364(d).  In support, the Debtor states:

**I. Summary of Borrowing Provisions**

1.      By this Motion, the Debtor seeks authority to enter into a Debtor-In-Possession Loan Agreement (the "AVX Agreement") with AVX Learning, LLC ("AVX Learning"), and obtain authority to use cash collateral and obtain postpetition financing. A copy of the AVX Agreement is attached hereto as **Exhibit A**.

2.      Pursuant to Rules 4001(b)(1)(B) and 4001(c)(1)(B) of the Federal Rules of Bankruptcy Procedure and Southern District of Indiana Local Rule B-4001-2, following is a

summary of the relief requested, together with the material provisions of the AVX Agreement and the proposed interim order granting this Motion (the "Order"), a copy of which is attached hereto as **Exhibit B**:

    a.    By virtue of a prepetition loan and security agreement with BMO Harris Bank N.A., successor by merger with M & I Marshall & Ilsley Bank, f/d/b/a First Indiana Bank N.A. ("BMO Harris") may have an interest in the Debtor's cash collateral. By virtue of a prepetition loan agreement between the Debtor and ComVest Capital II, L.P. ("ComVest"), ComVest may have an interest in the Debtor's cash collateral.

    b.    The original amount of the commitment under the AVX Agreement will be $1,000,000 (AVX Agreement, at § 1.1(a)(ii); Order, at Ex. A, ¶ 14).

    c.    Pursuant to the AVX Agreement, the non-default interest rate of interest is 5% (AVX Agreement, at § 1.5(a); Order, at ¶ 3(c)(ii)). The default rate of interest is 9% (AVX Agreement, at §§ 1.5(b), 6.1).

    d.    In the event that the amounts borrowed under the AVX Agreement are repaid with amounts other than the proceeds of a sale of the Debtor's assets to AVX Learning, the Debtor is required to pay a $250,000 repayment fee to AVX Learning (AVX Agreement, at § 1.5(d); Order, at ¶ 3(c)(iii)).

    e.    The AVX Agreement matures and becomes due and payable on the Termination Date, defined in paragraph 44 of Exhibit A to the Order as, at AVX Learning's election, the earliest to occur of: (i) the date on which AVX Learning provides written notice of the occurrence and continuance of an event of default; (ii) the date that is 21 days following the entry of the Order if a final order is not entered in form and substance satisfactory to AVX Learning by such date; (iii) the date of the final hearing, if the Order is modified at the final hearing in a manner unacceptable to ComVest or AVX Learning; (iv) the closing date of the sale of substantially all of the Debtor's assets in accordance with the requirements of the AVX Agreement; (v) the date on which the obligations under the AVX Agreement are indefeasibly paid in full in cash; and (vi) a date to be determined in December 15, 2013.

    f.    Conditions precedent to the Debtor's ability to obtain advances under Section 4.1 of the AVX Agreement include the requirement that the Debtor (i) name AVX Learning as an additional insured and/or loss payee under its insurance policies; (ii) defend the collateral against any and all claims by persons other than ComVest; (iii) pay the costs, fees, and expenses of any financial consultant engaged by AVX Learning; and (iv) engage senior management acceptable to AVX Learning.

g.  Subject to the Investigation Period defined in paragraph 9 of the Order, the Debtor stipulates to the validity, priority, extent, and enforceability of the liens and claims of ComVest, and waives all offsets, defenses, or counterclaims to those interests or debt (Order, at ¶¶ 4, 9).

h.  Under the AVX Agreement and the Order, amounts borrowed under the AVX Agreement are entitled to superpriority administrative expense status in favor of AVX Learning under 11 U.S.C. § 364(c)(1) (AVX Agreement, at § 4.1(i)(ii); Order, at ¶ 3(d)).

i.  Under the AVX Agreement and the Order, the Debtor shall grant AVX Learning first priority postpetition liens pursuant to 11 U.S.C. §§ 364(c)(2), (c)(3) and 364(d), subject only to the liens of ComVest and BMO Harris. The postpetition liens in favor of AVX Learning are not subject to any security interest or lien which is avoided and preserved under 11 U.S.C. § 551, are not subject to subordination under 11 U.S.C. § 510(c), and shall remain in full force and effect notwithstanding any subsequent conversion or dismissal of the bankruptcy case (AVX Agreement, at § 4.1(i)(ii); Order, at ¶ 3(d)).

j.  The postpetition liens granted in favor of AVX Learning extend to causes of action and recoveries under 11 U.S.C. §§ 544, 547, 548, 549, 550, and 553, subject to entry of a final financing order (AVX Agreement, at § 6.1; Order, at Ex. A, ¶ 24).

k.  Events of default are set forth in Section 5.1 of the AVX Agreement, and generally include default on indebtedness; failure of the Debtor, its subsidiaries, or any guarantor to comply with any term, obligation, covenant, or condition of the AVX Agreement or related documents; default of certain credit obligations; breach of any warranty, representation, or statement made in connection with the AVX Agreement; failure of the AVX Agreement; the occurrence of certain events within the bankruptcy case (including filing by the Debtor of a plan that is not acceptable to AVX Learning); failure of the Debtor or its subsidiaries to engage senior management acceptable to AVX Learning; and a material adverse change to the Debtor's business or assets.

l.  The AVX Agreement includes the waiver or modification of certain rights, including the waiver of the Debtor's rights (i) under 11 U.S.C. § 506(c), subject to entry of a final financing order (AVX Agreement, at § 4.1(i)(ii); Order, at ¶ 8); (ii) of subrogation to or reimbursement from its subsidiaries (AVX Agreement, at § 6.2(c)); and (iii) of setoff, counterclaim, counter demand, recoupment, or similar rights (AVX Agreement, at § 6.2(e); Order, at ¶ 12).

m.  Upon the occurrence of an Event of Default as defined in Section 5.1 of the AVX Agreement, AVX Learning is entitled to take possession of the

collateral (AVX Agreement, at § 5.2). On the fifth business day after termination, the automatic stay of 11 U.S.C. § 362 is automatically terminated to allow AVX Learning and/or ComVest to exercise their rights with regard to the collateral (Order, at ¶ 17).

n.      Under the AVX Agreement, the Debtor agrees generally to defend, protect, and indemnify AVX Learning from all claims relating to or arising out of the AVX Agreement or related documents, any prepetition documents or acts, and any event or transaction related thereto (AVX Agreement, at § 6.3(q)).

## II. Procedural Background

3.      On October 15, 2013 (the "Petition Date"), the Debtor filed a voluntary chapter 11 petition commencing this case. The Debtor continues to operate its business and manage its property as a debtor-in-possession pursuant to 11 U.S.C. §§ 1107(a) and 1108.

4.      No trustee or examiner has been appointed in this chapter 11 case. No official unsecured creditors' committee has been appointed in this chapter 11 case.

5.      This is a "First Day Motion," as defined in Local Rule B-9013-3(f).

6.      The Court has jurisdiction over this motion pursuant to 28 U.S.C. §§ 157 and 1334. Venue is proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(D) and (M).

7.      Proposed counsel for the Debtor has discussed the filing of this case with the chief courtroom deputy for the U.S. Bankruptcy Court for the Southern District of Indiana and a staff attorney for the United States Trustee, and has advised the Office of the United States Trustee of this motion in accordance with Local Rule B-9013-3(b).

## III. General Background

8.      The Debtor is a holding company, incorporated under the laws of the state of Minnesota. Its primary assets are two separate operating companies, ABG, an Adayana Company, and Vertez Solutions, Inc. (collectively, the "Debtor Subsidiaries"), one of which is

4

headquartered in Indianapolis, and the other in Virginia. Both of the Debtor Subsidiaries are in the "human capital" business, providing an array of technology–based consulting and training services.

9.  The Debtor is the sole owner of the capital stock of the Debtor Subsidiaries, and estimates the value of that stock at approximately $11,072,000.

10.  On or about March 20, 2008, the Debtor Subsidiaries entered into a Credit Agreement with BMO Harris. Pursuant to the Credit Agreement, as amended from time to time, BMO Harris provided the Debtor Subsidiaries a line of credit in the principal amount of $7,000,000. The Debtor guaranteed all of the Debtor Subsidiaries' obligations under the Credit Agreement, and the Debtor also granted BMO Harris a security interest in substantially all of its assets to secure those obligations. The Debtor did not, however, pledge the capital stock of the Debtor Subsidiaries as collateral under the Credit Agreement. BMO Harris recorded and continued its security interest in the Debtor's assets with the Minnesota Secretary of State. The Debtor scheduled BMO Harris on Schedule F as an unsecured creditor with a contingent, unliquidated claim in an unknown amount arising from the Debtor's guaranty of the Debtor Subsidiaries' obligations under the Credit Agreement.

11.  On or about August 1, 2010, the Debtor entered into a Loan Agreement with ComVest, pursuant to which ComVest agreed to provide the Debtor with a term loan in the principal amount of $10,000,000. On August 10, 2010, in connection with the Loan Agreement, the Debtor executed a Convertible Term Note promising to pay ComVest $10,000,000 on July 31, 2014. The Debtor Subsidiaries guaranteed the Debtor's obligations under the Loan Agreement. To secure the amounts due and owing to ComVest by the Debtor, on or about August 10, 2010, the Debtor and the Debtor Subsidiaries executed a Collateral Agreement

pursuant to which each granted ComVest a security interest in substantially all of their assets. Under the Collateral Agreement, the Debtor pledged the capital stock of the Debtor Subsidiaries to secure its obligations under the Loan Agreement. ComVest recorded its security interest in the Debtor's assets with the Minnesota Secretary of State, and has possession and control of the capital stock of the Debtor Subsidiaries. As of the Petition Date, the amount due and owing from the Debtor to ComVest under the Loan Agreement and related documents was approximately $12,028,526.

12. On or about August 10, 2010, BMO Harris and ComVest entered into an Intercreditor Agreement pursuant to which they set forth the priority of their respective security interests in and/or liens on the Debtor's and the Debtor Subsidiaries' assets.

13. On January 5, 2010, IBM Credit LLC filed a precautionary financing statement with the Minnesota Secretary of State as lessor asserting a security interest in certain computer equipment.

14. Over the last two years, the Debtor has attempted to restructure its various obligations out-of-court, but has been unsuccessful. The Debtor now has negative cash flow and needs substantial additional working capital, to successfully resolve its financial issues.

15. The purpose of the chapter 11 case is to facilitate a sale of substantially all of the Debtor's assets, including the capital stock of the Debtor Subsidiaries, either to a new entity, created and controlled by AVX Learning, or to a third-party investor, as circumstances warrant.

## IV. Relief Requested

16. The Debtor has performed a preliminary investigation and analysis of the related UCC filings and based upon this investigation believes that its obligations to ComVest are secured by valid, enforceable, and non-avoidable liens and security interests in substantially all

of the property owned by the Debtor.

17. While the Debtor believes the postpetition financing it seeks from AVX Learning will be sufficient to fund postpetition operations, the Debtor may have a need to use cash collateral in which BMO Harris and/or ComVest have an interest, in order to permit, among other things, the orderly continuation of the operation of the Debtor's business. In that instance, use of cash collateral will be necessary to prevent harm to the Debtor and its property that would otherwise result if the Debtor is prevented from obtaining the use of cash collateral for the continued operation of its business.

18. As adequate protection for the use of cash collateral in which ComVest may have an interest, the Debtor stipulates to the validity, priority, extent, and enforceability of the prepetition liens and claims of ComVest, and waives all offsets, defenses, or counterclaims to that debt. This stipulation is subject to challenge by any committee, trustee, or other party-in-interest during the Investigation Period, defined in the Order as the date that is the earliest of (a) seventy-five (75) days after the Filing Date; (b) sixty (60) days after the date that a committee is formed, if any; and (c) the date by which Debtor is required to conduct an auction in accordance with the deadlines established in the Order.

19. As adequate protection for the use of cash collateral in which BMO Harris may have an interest, the Debtor has agreed to reaffirm its guaranty of the Debtor Subsidiaries' obligations to BMO Harris under the March 20, 2008 Credit Agreement.

20. Because cash collateral will not be sufficient to fund postpetition operations, however, it is necessary for the Debtor to obtain additional operating funds. AVX Learning has agreed to provide postpetition financing to the Debtor on the terms set forth in the AVX Agreement.

21.  To protect AVX Learning during the course of the chapter 11 case, amounts borrowed under the AVX Agreement are entitled to superpriority administrative expense status under 11 U.S.C. § 364(c)(1). The Debtor will also grant AVX Learning first priority postpetition liens pursuant to 11 U.S.C. §§ 364(c)(2) and (c)(3), and 364(d), subject only to the liens of ComVest and BMO Harris. As part of the AVX Agreement, and subject to entry of a final financing order, the Debtor waives its rights to surcharge AVX Learning under 11 U.S.C. § 506(c) for any costs or expenses of administration. The liens granted to AVX Learning remain in full force and effect notwithstanding any subsequent conversion or dismissal of the bankruptcy case, and the AVX Agreement is binding on any subsequently appointed chapter 11 trustee or chapter 7 trustee.

22.  The terms proposed in the AVX Agreement are the most favorable terms the Debtor has been able to obtain.

23.  The Debtor is unable to obtain unsecured credit allowable as an administrative expense under 11 U.S.C. 503(b)(1).

24.  The Debtor's projections for the interim operating period are attached hereto as **Exhibit C** (the "Interim Budget"), and show that the Debtor's use of Cash Collateral will be limited to payment of costs associated with the Debtor's operations, including payroll and senior management obligations; rent and vendor payments; interest payments to AVX Learning; and restructuring costs.

## V. Basis for Relief Requested

25.  In accordance with 11 U.S.C. § 363(c)(2), Rule 4001 of the Federal Rules of Bankruptcy Procedure, and Local Rule 4001-2, the Debtor requests that the Court enter an Order authorizing, through the date of a final hearing, the interim use of cash collateral to the extent

8

necessary to fund postpetition operations and in accordance with the Interim Budget.

26. Section 363(c)(2)(A) of the Bankruptcy Code provides that the Debtor may use cash collateral if the entity that has an interest in such cash collateral consents. ComVest is willing to consent to the use of cash collateral and the protections offered to AVX Learning, but only pursuant to the terms of the AVX Agreement and Order. BMO Harris has indicated that it will consent to the use of cash collateral and the protections offered to AVX Learning if the Debtor reaffirms its guaranty of the Debtor Subsidiaries' obligations to BMO Harris under the March 20, 2008 Credit Agreement, which the Debtor has agreed to do.

27. Section 364(c) of the Bankruptcy Code allows the Debtor, after notice and hearing, to obtain credit (a) on an unsecured, super-priority basis; (b) on a secured basis on property not otherwise subject to a lien; or (b) on a secured basis with a priority junior to existing liens. In this case, the Debtor has attempted to obtain unsecured credit allowable as an administrative expense under 11 U.S.C. § 503(b)(1), but has been unable to do so.

28. Section 364(d)(1) of the Bankruptcy Code allows a debtor to obtain secured credit of senior or equal priority to existing liens after notice and a hearing if there is no other available credit and any liens so affected are adequately protected. As previously stated, the only postpetition financing the Debtor has been able to obtain is from AVX Learning, and only on the terms set forth in the AVX Agreement. Accordingly, the requirement of 11 U.S.C. § 364(d)(1)(A) is satisfied. Because the Debtor is offering ComVest and BMO Harris adequate protection of its prepetition interest, the requirement of 11 U.S.C. § 364(d)(1)(B) is also satisfied.

29. The Debtor's value is driven by the value of the operating Debtor Subsidiaries. Authorizing the Debtor to proceed under the AVX Agreement will ensure that the value of the Debtor and the Debtor Subsidiaries is maintained for a period of time sufficient to consummate a

sale of the Debtor's assets at the highest possible price. The relief requested herein is an exercise of the Debtor's sound business judgment and is in the best interest of the Debtor, its creditors, and its estate.

30.     The AVX Agreement and the Order have been negotiated in good faith and at arms' length between the Debtor, AVX Learning, and ComVest. Accordingly, the Debtor requests that AVX Learning be afforded the protections of 11 U.S.C. § 364(e).

31.     The Debtor is still negotiating both interim and final orders granting the relief requested in this motion with ComVest, BMO Harris and AVX.  Accordingly, some terms of the proposed orders may change by the time of a hearing on this and other first day motions.  If any changes are made counsel for the Debtor will highlight such changes to the Court and the United States Trustee.

[*Rest of page left intentionally blank*]

WHEREFORE, the Debtor requests entry of an the Order (1) authorizing and allowing it to enter into the AVX Agreement; (2) authorizing the Debtor to use cash collateral in accordance with 11 U.S.C. § 363(c) on the terms set forth in the AVX Agreement and the Order, and in a manner consistent with the Interim Budget, through the entry of a final order; (3) authorizing the Debtor to incur secured postpetition debt 11 U.S.C. § 364(c) and (d) on the terms set forth in the AVX Agreement and the Order; (4) authorizing the Debtor to grant adequate protection and provide security to ComVest Capital II, L.P. pursuant to 11 U.S.C. § 364(d); (5) finding that AVX Learning is entitled to the protection of 11 U.S.C. § 364(e); and (6) granting all other proper relief.

DATED: October 15, 2013        ADAYANA, INC.,
                               Debtor and debtor-in-possession,


                        By:    /s/  Michael P. O'Neil
                               Michael P. O'Neil, One of its proposed counsel

Michael P. O'Neil
TAFT STETTINIUS & HOLLISTER LLP
One Indiana Square, Suite 3500
Indianapolis, Indiana 46204-2023
Telephone: (317) 713-3500
Facsimile: (317) 713-3699
Email: moneil@taftlaw.com

1951141